is bound to administer the law, cannot take these circumstances into consideration. The text of the law is imperative, and it is framed in the spirit of wisdom and humanity; and the interests of commerce as well as humanity require that it should be carried into effect. The putting the crew upon an allowance, was, under the circumstances of the case, if not a matter of absolute necessity, one of prudence, and there cannot be a reasonable doubt but that it was a short allowance. According to the testimony of the cook, they were upon allowance twenty-two days, but the statement of the mate is, that they were upon allowance nine days after leaving Bonavista, and the allowance was discontinued five days before their arrival in this port. As the passage was thirty-two days, that will leave eighteen. In addition to the balance of wages, I shall allow extra pay for eighteen days.

MARY, The (MINORS v.). See Case No. 9,-644.

MARY, The (O'HARA v.). See Case No. 10,-467.

## Case No. 9,192.

### MARY v. TALBURT.

[4 Cranch, C. C. 187.] [1]

Circuit Court, District of Columbia. Dec. Term, 1838.

SLAVES—SUIT FOR FREEDOM—RUNNING AWAY.

1. A slave, brought into the county of Washington, D. C., from Virginia, by her owner, afterwards ran away, and her owner sold her "running." *Held*, that she did not thereby lose the benefit of the provision of law in her favor.

2. A person coming to reside here may, under the 2d section of the Maryland statute of 1796, c. 67, lawfully bring his slaves with him; but if he sells them within three years after his removal, he loses the benefit of the exception in his favor, continued in the 2d section, and they are entitled to their freedom under the 1st section of the act.

Petition for freedom.

R. S. Coxe, for defendant, prayed the court to instruct the jury, that if the petitioner was brought here from Virginia by her lawful owner, and afterward ran away, and her owner sold her running, supposing her to be then in Virginia; the running away in fraud of the law will prevent the slave from the benefit of the provision in her favor.

THRUSTON, Circuit Judge, stated the construction of the statute to be this: By the 1st section of the Maryland act of 1796, c. 67, a slave imported, for sale or to reside, is free. The 2d section contains an exception in favor of those who come here to reside. The 3d section is an exception to the 2d so as to prevent it from operating in favor of an owner so removing, who shall sell the slave within three years after his removal.

THE COURT said that THRUSTON, Circuit Judge, stated the law correctly, as it had been decided lately in a case in Alexandria, in which Mr. Taylor was engaged. Harris v. Alexander [Case No. 6,113], at April term, 1830.

THE COURT refused to give the instruction prayed by Mr. Coxe.

Verdict for the petitioner.

MARY, The (TUNNO v.). See Case No. 14,-237.

MARY, The (WILSON v.). See Case No. 17,-823.

## Case No. 9,193.

### The MARY A. HOWES.

[Cited in The W. D. B., Case No. 17,306. Nowhere reported; opinion not now accessible.]

## Case No. 9,194.

### The MARY ANN.

[Abb. Adm. 270; [1] 13 Betts, D. C. MS. 12.]

District Court, S. D. New York. April, 1848.

SEAMEN'S WAGES—ILLEGAL VOYAGE—KNOWLEDGE—RIGHT TO PREVENT CRIME—MERE SUSPICION—TAKING POSSESSION—RIGHT TO LEAVE.

1. It seems that seamen employed on board a vessel forfeited under the act of 1800, (2 Stat. 70,) as fitted out for the slave-trade, are entitled to wages, notwithstanding the forfeiture, if they were not knowingly or willingly connected with the criminal purpose of the voyage.

2. Seamen are authorized under the general maritime law to prevent or restrain their officers from the commission of open and flagrant crimes in the ship, attempted in the presence of the seamen.

3. But the crew are not justified, by circumstances affording reasonable ground of suspicion merely that the master is about to engage the vessel in the slave-trade, in taking possession of her at sea, or in a foreign port, and bringing her back to her home port; and their undertaking so to do, forfeits both the wages already earned and those for the residue of the voyage.

[See The Almatia, Case No. 254.]

4. The right of seamen to leave the vessel on the ground of her being chartered for a voyage in gross deviation from that for which they shipped, will not justify them in taking possession of the vessel while at sea.

5. Costs of a suit for seamen's wages imposed on libellants, where the crew had taken possession of the vessel while on her voyage and brought her home, under reasonable grounds of suspicion that she was to be engaged in the slave-trade.

A libel in rem was filed by James States, William Gray, Edward Davis, Thomas Holden, and Peter Johnson, crew of the schooner Mary Ann, against that vessel, to recover wages. There was also filed a libel in personam, by Peter Johnson alone, against William F. Martin, the owner of the schooner, to recover the same wages as were claimed by the libellants in the other suit. The facts

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

[1] [Reported by Abbott Brothers.]